IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **GARVIN BEDFORD**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14 C 10196 |
| | ) | |
| **UNITED AIRLINES, INC.**, | ) | |
| an Illinois Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Garvin Bedford ("Bedford") filed this action charging that the termination of his employment by United Airlines, Inc. ("United") was the product of unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). Defendant United has responded with a motion for summary judgment, seeking to resolve the case in its favor as a matter of law. For the reasons set forth in this opinion, United's motion is granted.

## Background

Bedford is a 57-year-old African American male, and he was employed as a Customer Service Representative for United from January 29, 1996 to January 21, 2014 (B. St. ¶¶ 1, 2).[1] On or about the latter date, United terminated Bedford for attempting to take food off an international flight at O'Hare International Airport in violation of both United's policy and

---

[1] Citations to United's Statement of Material Facts will take the form "U. St. ¶ --," with Bedford's Response to that Statement cited "B. St. ¶ --" and United's Supplement to its Statement of Material Facts cited "U. Supp. St. ¶ --." Similarly, citations to United's Memorandum in Support of its Motion for Summary Judgment will take the form "U. Mem. --," with Bedford's Response Memorandum cited "B. Mem --."

federal regulations (U. St. ¶ 57; see 7 C.F.R. § 330.400 and 9 C.F.R. § 94.5). Rules and regulations against tampering with or removing international catering are intended to safeguard the United States agriculture industry by preventing exposure to certain types of plant pests or livestock diseases (U. St. ¶¶ 12-14). Bedford claimed that because of his age and race he received treatment different from that received by another employee, Maria Stockdale ("Stockdale"), who was also caught taking food during the same incident but -- unlike Bedford -- was not ultimately terminated. Stockdale is a white female who was under the age of 40 as of the date of the incidents in question (B. St. ¶ 3).

As for Bedford, Customs and Border Patrol Officer Mariola Krosniak ("Krosniak") reported that on October 17, 2013 she caught him attempting to remove international catering from flight UA 929, which had just landed from London and parked at O'Hare International Airport (U. St. ¶¶ 4, 5, 17). When Krosniak boarded the flight she observed Bedford place several containers of food in a white "Bed, Bath, and Beyond" bag and place two additional containers in the oven (U. St. ¶¶ 6, 7). Customer Service Representatives have a reason to board incoming flights: They are generally responsible for checking the plane for lost or misplaced items (U. St. ¶ 23). But it was Stockdale, not Bedford, who had been assigned to that particular flight (U. St. ¶ 17). Bedford claimed in his deposition that he had entered the plane to remind Stockdale to retrieve old newspapers, and that when he entered Stockdale asked him to help her look for a passenger's ring (U. St. ¶¶ 38, 39).

But Stockdale offered a different account of what happened: She testified (1) that usually a third party contractor and not Customer Service Representatives retrieve newspapers and (2) that she did not ask Bedford to help her find the ring because she did not know he was on the plane until she saw him behind Krosniak (U. St. ¶¶ 29, 30, 36, 37). But she admitted that she

-2-

was also caught by Krosniak taking food from UA 929 that day. What follows is her version of the events that took place.

First she waited for all passengers to deplane UA 929 so that she could board the plane and check for lost or misplaced items (U. St. ¶¶ 22-24). Before she boarded, a crew member asked her to look for a ring that a passenger had misplaced in the business class cabin (U. St. ¶ 24). When she entered the plane and walked by the first class cabin, she opened the oven doors and found a tray of tortellini that was still hot (U. St. ¶ 26). Then she took the tray of food and started to eat it as she walked toward the business class cabin to look for the ring (U. St. ¶ 27). As she was walking toward the business class cabin she was startled by Krosniak, who asked for her badge (U. St. ¶ 28). Behind Krosniak stood Bedford, whom she had not seen board the plane, nor did she know he was on the aircraft (U. St. ¶¶ 29, 30). Stockdale never denied eating food from the flight, and she made an immediate admission in an investigative meeting the next day (U. St. ¶¶ 43, 44). Thereafter she was held out of service without pay (U. St. ¶ 45). But in the following week she accepted United's offer for her to return to work pending its final decision on disciplinary actions (U. St. ¶ 46). Stockdale was then offered a "last chance" agreement to return to work, which she accepted (U. Supp. St. ¶ 64).

On the other hand, Bedford has never admitted his having attempted to remove food from the aircraft, and he still denies doing so to this day (U. St. ¶ 48). Instead he claims that he did not know there was food in the bag next to him or in the microwave (U. St. ¶ 50). Shortly after the incident Bedford's supervisor confronted him, and he denied the allegation (U. St. ¶ 52). Then Bedford continued to deny the allegation during a subsequent investigation meeting and a review hearing, which included a three step investigation and hearing process with two different hearing officers (U. St. ¶ 53). After conducting an investigative hearing at which Bedford was

represented by the his union, United determined that he had indeed entered an aircraft without authorization and then attempted to remove food from the aircraft in violation of airline policy and federal regulations (N. Dep. 94:7-13; 108:1-16). Then, despite his refusal to admit the charges, United twice offered Bedford the opportunity to return to work under a "last chance" agreement, an offer that he refused (U. St. ¶¶ 54, 55; U. Supp. St. ¶¶ 67, 68). United then made the decision to terminate his employment (U. St. ¶ 57).

## **Legal Standard**

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider evidentiary records in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). Courts "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" in resolving motions for summary judgment (Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (id.).

And though summary judgment standards require courts to view all facts in a light most favorable to the nonmovant, "[a] party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it'" (Caisse Nationale de Credit Agricole v. CBI Industries, Inc., 90 F.3d 1264, 1270 (7th Cir. 1996)). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## Title VII and Age Discrimination Claims

Title VII makes it unlawful for an employer to discharge or discipline an employee because of that person's race or gender, among other grounds (42 U.S.C. § 2000e-2). In addition the ADEA protects individuals 40 years of age or older from employment discrimination based on age (29 U.S.C. § 623).

To prove employment discrimination under Title VII or the ADEA a plaintiff must make out a prima face case by establishing that he or she (1) is a member of a protected class, (2) was meeting the employer's legitimate expectations and (3) suffered an adverse employment action and (4) that his or her employer treated similarly situated employees outside of the protected class more favorably (Peele v. Country Mut. Ins. Co., 288 F.3d 319, 326 (7th Cir. 2002)). Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the employment action (id.). After that the plaintiff can still prevail if he or she proves that the reason given was a pretext for unlawful discrimination (Perez v. Illinois, 488 F.3d 773, 776 (7th Cir. 2007)). Lastly, in Ortiz v. Werner Enters., Inc., 834 F.3d 760, 765 (7th Cir. 2016) our Court of Appeals recently clarified that employment discrimination evidence need not "be sorted into different piles, labeled 'direct' and 'indirect,' that are evaluated differently. Instead, all evidence belongs in a single pile and must be evaluated as a whole."

Here the crux of Bedford's claim is that Stockdale was a similarly situated employee who was treated more favorably than Bedford because of her age and race. To determine whether employees are similarly situated, courts undertake "a 'flexible, common-sense' examination of all relevant factors" (Coleman v. Donahoe, 667 F.3d 835, 846 (7th Cir. 2012), quoting Henry v. Jones, 507 F.3d 558, 564 (7th Cir. 2007)). Generally, to show that a fellow employee was

similarly situated the plaintiff must prove that he or she dealt with the same decisionmaker, was subject to the same standards and engaged in similar conduct (Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (2000)). And he or she must show that the circumstances of their conduct were relatively the same as well (id.)(internal citation omitted)

> For example, in disciplinary cases -- in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason -- a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct. This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.

Hence to prevail on summary judgment Bedford must show that Stockdale engaged in similar conduct and that United meted out less severe discipline in response. In addition, there must be an absence of differentiating or mitigating circumstances that would distinguish (1) Bedford's and Stockdale's conduct or (2) United's treatment of the two or (3) both.

United acknowledges that Bedford and Stockdale engaged in similar conduct: Both violated the federal regulations and airline policies that prohibit eating or removing catering from international flights (U. Mem. 2). Then, following the incident, United imposed on them the same disciplinary procedures: Both were suspended without pay and subjected to an investigation and disciplinary determination (U. Mem. 4-5).

But then their paths diverged sharply: Stockdale immediately admitted to taking the food, and she accepted the probationary arrangement United offered her to return to work (id.). On the other hand, Bedford denied attempting to remove food from the plane, and he then rejected United's offer to return to work on a probationary basis -- an offer identical to the one tendered to and accepted by Stockdale (U. Mem. 5-6; U. Supp. St. ¶ 64). From the airline's entirely reasonable perspective there were substantial differences in Bedford's and Stockdale's

conduct: Bedford lied and refused to accept a deal to return to work, while Stockdale admitted fault and accepted a probationary arrangement. Those plainly amount to factors that would rationally justify the airline in terminating Bedford's employment while retaining Stockdale's.

To be sure, it is true that Bedford has still not admitted to attempting to take food from UA 929. But United conducted an investigation and an adversarial hearing at which Bedford was represented by the union, and it determined that his claim of innocence was not to be believed (U. St. ¶¶ 53-56). And in his briefings Bedford does not offer an outright denial that he took the food, nor does he mount a due process claim against United's decisionmaking process, nor does he offer any evidence whatever that would negate the testimony of two people: Krosniak stated that she spotted Bedford on a plane without authorization to be there and that he was in possession of a bag of food trays, while Stockdale directly contradicted Bedford's testimony that she asked for his assistance in finding the ring.

Instead Bedford proffers two dubious arguments: First, that Stockdale's infraction (eating food on the aircraft) is more serious than his own alleged infraction (attempting to take food off the aircraft), and second, that two employees are still "similarly situated" for purposes of a discrimination claim even if one lies during an investigation and the other does not (B. Mem. 6-7).

Both those arguments appear to undercut any claim that Bedford did not steal food in the first place. If Bedford had sought to advance a claim that he was wrongly accused of attempting to steal food and was thus wrongly terminated, he has certainly failed to do so -- and it is important to remember that "[a] party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it'" (Caisse Nationale de Credit Agricole, 90 F.3d at 1270).

So Bedford's argument that he was similarly situated to Stockdale falls flat, and with it the argument that he was treated worse because of his age or race or both. And other than his claim that Stockdale was given preferential treatment, Bedford offers no other argument that United discriminated against him. Finally, he offers no evidence or argument that he is innocent of the violation for which he was terminated.

## Conclusion

For the reasons stated at length in this opinion, United's motion for summary judgment (Dkt. No. 88) is granted in its entirety.[2] This action is dismissed with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 11, 2017

---

[2] Relatedly, United's Motion (Dkt. No. 104) to supplement its Statement of Material Facts referred to in n.1 is eminently reasonable and is also granted.